**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Richard Alexander Murdaugh, Sr., | ) | Civ. No.  2:26-cv-1989-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **RESPONSE TO DEFENDANT'S** |
| v. | ) | **MOTION TO DISMISS** |
| | ) | |
| Rebecca Hill, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Richard Alexander Murdaugh, through his undersigned attorneys, submits this memorandum in response to the 44-page motion to dismiss of Defendant Rebecca Hill.  Ms. Hill's motion to dismiss does not, and cannot, deny what the Supreme Court of South Carolina has already held unanimously: that Ms. Hill, then the elected Clerk of Court sworn to protect the jury, instead secretly tampered with it and thereby stole from Mr. Murdaugh his constitutional right to a fair trial by an impartial jury.  Having "placed her fingers on the scales of justice" for personal profit, *South Carolina v. Murdaugh*, No. 2023-000392, 2026 WL 1322305, at *1 (S.C. May 13, 2026), Ms. Hill now asks this Court to hold that she may do so without consequence.  She cannot.

Ms. Hill's motion is a makeweight damages motion masquerading as a motion to dismiss. It barely engages the elements of Mr. Murdaugh's 42 U.S.C. § 1983 claim—that a state actor, acting under color of state law, deprived Mr. Murdaugh of a federal constitutional right—because those elements are well pleaded.  Instead, the motion attacks a single measure of compensatory damages and asserts a trio of immunities.  These arguments fail for three reasons.  *First*, a dispute over one item of damages is no basis to dismiss a well-pleaded constitutional claim: nominal damages independently sustain this action regardless of the proper measure of actual damages. *Second*, the constitutional violation was decided by the South Carolina Supreme Court.  Therefore,

1

in the absence of any further development of the record, the Court should abstain from entertaining Ms. Hill's harmless-error arguments, which in any event are too fact-bound to consider in a motion to dismiss. *Third*, at this stage the Court must accept the Complaint's factual allegations as true and these allegations plainly establish Mr. Murdaugh's standing to bring a claim against Ms. Hill.

Ms. Hill's asserted immunity defenses fare no better. The Eleventh Amendment does not bar damages claims against Ms. Hill in her individual capacity. Quasi-judicial immunity does not shield a clerk's own unauthorized, criminal jury tampering, conduct the trial judge would have forbidden had he known of it. And qualified immunity is unavailable because the illegality of a court officer deliberately tampering with the jury in a criminal trial has been clearly established for at least sixty years, and because Ms. Hill's deliberate, concealed, profit-driven misconduct is an obvious violation by any measure. The motion therefore should be denied.

## I.    Statement of Facts

The following well-pleaded facts are taken as true for purposes of this motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

In January 2023, Mr. Murdaugh stood trial in Colleton County for the murders of his wife and son. Compl. ¶ 16. Ms. Hill was the elected Clerk of Court and, as "the officer of the court charged as the primary caretaker of the jury," was entrusted to shield the jury from outside influence. Compl. ¶¶ 4, 10. She did the opposite. Motivated by a desire to write and sell a book about the trial—because, in her words, "she needed a lake house"—Ms. Hill believed a guilty verdict "would be the best way to sell books," and she set out to obtain one. Compl. ¶¶ 6, 36, 43.

To that end, Ms. Hill made repeated, improper communications to the jurors she was sworn to protect. She told them not to be "fooled," "confused," "thrown off," or "convinced" by Mr. Murdaugh and his defense; instructed them to "watch him closely" and "look at his actions" as he testified; and told them the day he testified was "epic." Compl. ¶¶ 5, 17, 19, 39, 40, 45, 53. She

held secret, repeated private conversations with the foreperson and instructed jurors they could not ask about them.  Compl. ¶ 18.  She fabricated a Facebook post, interrogated and lied to a juror about it, and manufactured a pretext to have that juror—who "had not made up her mind"—removed.  Compl. ¶¶ 20–33.  At least one juror testified that Ms. Hill's conduct influenced her guilty verdict.  Compl. ¶ 39.

On May 13, 2026, the Supreme Court of South Carolina unanimously reversed Mr. Murdaugh's convictions and remanded for a new trial, holding that Ms. Hill's jury tampering violated Mr. Murdaugh's right to a fair trial by an impartial jury.  Compl. ¶¶ 8, 51–55.  The court found that Ms. Hill "clearly advised the jurors to find Murdaugh and the evidence he presented not credible and, essentially, urged them to render a guilty verdict," and that her "breathtaking and disgraceful effort . . . to undermine the jury process is unprecedented in South Carolina." *Murdaugh*, 2026 WL 1322305, at *11.  Separately, Ms. Hill pleaded guilty to perjury, obstruction of justice, and misconduct in office arising from her conduct surrounding the trial.  Compl. ¶ 50.

Mr. Murdaugh funded his defense of the tainted trial with a $600,000 withdrawal from his 401(k) retirement account—his sole remaining asset.  Compl. ¶¶ 56, 62.  Because Ms. Hill corrupted the proceeding that money purchased, the convictions were vacated, and the expenditure was lost. Accordingly, Mr. Murdaugh brings this action under 42 U.S.C. § 1983, seeking compensatory damages, punitive damages, and fees.  Compl. ¶¶ 58–64 & Prayer.

## II.    <u>Legal Standard</u>

When considering a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011).  A claim survives if it pleads facts that, taken as true, state a plausible claim for relief.  *E.I. du Pont de Nemours*, 637 F.3d at 440.  The

question is not whether the plaintiff will ultimately prevail, nor whether any particular measure of damages is available, but whether the complaint states a claim. This means that a claim should be dismissed only if an essential element of the cause of action is not pleaded sufficiently. *See Brunson v. Stein*, 116 F.4th 301, 306 (4th Cir. 2024) (holding "a cause of action does *not* exist only if one or more elements is missing" (emphasis in original)).

Where a defendant mounts a facial attack to the Court's subject-matter jurisdiction under Rule 12(b)(1)—as Ms. Hill does—the same standard applies: the Court takes the jurisdictional allegations as true and construes them in the plaintiff's favor. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Article III standing at the pleading stage requires only "general factual allegations of injury resulting from the defendant's conduct." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### III.   Argument

### A.   The Complaint states a claim under § 1983 regardless of the proper measure of actual damages.

Ms. Hill's motion is built almost entirely on the premise that Mr. Murdaugh cannot recover $600,000 in criminal-defense fees. But even if that were correct (it is not), it would not warrant dismissal. A motion to dismiss tests the sufficiency of a claim, not the availability of a particular remedy. *See Brunson*, 116 F.4th at 306. The Complaint pleads every element of a § 1983 claim— that Ms. Hill, acting under color of state law, deprived Mr. Murdaugh of his Sixth and Fourteenth Amendment rights—and Ms. Hill does not seriously contend otherwise. That alone defeats the motion.

Ms. Hill's attack on the measure of compensatory damages in this case is premature and not cognizable in a Rule 12 motion because nominal damages are available under § 1983 upon proof of a violation of an absolute constitutional right, without any proof of compensatory

4

damages. *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 289–92 (2021) (holding nominal damages redress a completed constitutional violation and sustain a live claim). Ms. Hill's own motion concedes this, quibbling only that the Complaint did not expressly invoke nominal damages even though controlling Supreme Court and Fourth Circuit authority does not require a specific prayer for nominal damages in pleadings. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (holding in a § 1983 suit that precedent "*obligates* a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury" (emphasis added)); *Price v. City of Charlotte*, 93 F.3d 1241, 1246 (4th Cir. 1996) (holding, in a § 1983 action, that "[a] plaintiff's failure to prove compensatory damages results in nominal damages, typically one dollar"). Moreover, punitive damages are also available in a § 1983 action even in the absence of proven compensatory damages. *Haggwood v. Magill*, Case No. 5:15-cv-3271-RMG, 2016 WL 4149986, at *4 (D.S.C. Aug. 3, 2016) (citing *Carey*, 435 U.S. at 265 n.22).

**B.    Mr. Murdaugh's legal fees are recoverable from Ms. Hill under § 1983.**

Although arguments regarding the availability of attorney's fees or any other measure of compensatory damages are not relevant to the motion to dismiss, Mr. Murdaugh nevertheless will briefly address this irrelevant issue because Ms. Hill devoted nearly 20 pages of briefing to it, and he does not want to appear to concede that Ms. Hill's analysis has merit at any stage of these proceedings.

Ms. Hill opens her argument with a mischaracterization of this issue as being "novel." Mem. Supp. Mot. Dismiss 4. Only the factual predicate of Mr. Murdaugh's claims—Ms. Hill's "shocking jury interference" for personal profit—is "novel." *Murdaugh*, 2026 WL 1322305, at *16. There is nothing "novel" about a claim for attorney's fees incurred because of a state actor's violation of a defendant's civil rights. *E.g.*, *Borunda v. Richmond*, 885 F.2d 1384, 1386, 1389–90

5

(9th Cir. 1988) ("[E]xpenditures for legal representation during the prior criminal proceeding most assuredly constitute economic harm.  The reasonable amount of these expenditures, if proved to the jury's satisfaction to be the consequence of appellants' illegal conduct, is recoverable as compensatory damages."); *Kerr v. City of Chicago*, 424 F.2d 1134, 1141 (7th Cir. 1970) (holding that "[a] plaintiff in a civil rights action should be allowed to recover the attorneys' fees in a state criminal action where the expenditure is a foreseeable result of the acts of the defendant"); *Schiller v. Strangis*, 540 F. Supp. 605, 611 (D. Mass. 1982) (holding the plaintiff's "expenditures for legal representation during these criminal proceedings, if proved to be the consequence of defendants' illegal conduct, are recoverable as compensatory damages in this action" for an unlawful arrest); *Lykken v. Vavreck*, 366 F. Supp. 585, 597 (D. Minn. 1973) ("This court has no quarrel with the proposition that attorneys' fees actually incurred in a criminal proceeding as a foreseeable result of the defendant's acts may well be properly recoverable as an element of actual damages in an action under § 1983.").

Ms. Hill correctly quotes from a district court in the Fourth Circuit in stating, "The Fourth Circuit has never directly addressed whether a § 1983 plaintiff 'can recover attorneys' fees incurred in connection with an underlying state criminal proceeding.'"  Mem. Supp. Mot. Dismiss 4 (quoting *Glass v. Anne Arundel Cnty.*, Case No. 12-cv-1901-WDQ, 2015 WL 4619631, at *3 (D. Md. July 30, 2015)).  But Ms. Hill fails to inform the Court that Judge Quarles went on to hold that "the weight of the above-described persuasive authority favors the allowance of the recovery of attorneys' fees incurred during an underlying state action as an item of damages in a § 1983 suit *provided* that the plaintiff demonstrates that the attorneys' fees were a 'natural consequence' of the unlawful conduct" (emphasis in original) and ruled the plaintiff would "not be barred from offering evidence of attorneys' fees" at trial.  *Glass*, 2015 WL 4619631, at *4; *see also Train v. City of*

6

*Albuquerque*, 629 F. Supp. 2d 1243, 1255 (D.N.M. 2009) (allowing a plaintiff to present legal fees for defending against underlying criminal charges as evidence of damages in a § 1983 action).[1]

Thus, while different minds might disagree about the measure of damages in this case, there is nothing "novel" whatsoever about a claim for attorney's fees as damages for a violation of constitutional rights.

**1.    The Townes *line rests on search-and-seizure Fourth Amendment logic that has no application to a Sixth Amendment jury-tampering claim.***

Ms. Hill urges the Court to follow *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), and its progeny, *Hector v. Watt*, 235 F.3d 154 (3d Cir. 2000), and *Martin v. Marinez*, 934 F.3d 594 (7th Cir. 2019).  Mem. Supp. Mot. Dismiss 10.  Each is a Fourth Amendment search-and-seizure clause case turning on a doctrine unique to that clause: the "gross disconnect" between the privacy interest protected by the search-and-seizure clause and the injury of a resulting conviction.  As *Townes* explained, "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all"—so a guilty defendant freed on a suppression theory has already "reaped an enormous benefit" (his freedom) and should not also collect damages for his conviction.  176 F.3d at 148.

That reasoning has no purchase here.  The interest protected by the Sixth Amendment right to an impartial jury is the interest in a fair adjudication—the very interest Ms. Hill destroyed. There is no "disconnect" between the violation and the damages: the injury (a corrupted trial) fits the harm (the wasted cost of defending that corrupted trial) precisely.  Unlike the plaintiff in *Townes*, who sought a personal windfall from the discovery of his own concealed guilt, Mr. Murdaugh seeks recoupment of money he actually lost because a court officer secretly rigged his

---

[1] In both *Glass* and *Train*, this issue was decided on motions in limine, which are the appropriate means for litigating what may be evidence of compensatory damages, not a motion to dismiss a claim that does not even have actual damages as a required element.

trial. The Supreme Court's tailoring principle—that § 1983 damages be fitted "to the interests protected by the particular right in question," *Carey*, 435 U.S. at 258–59—therefore favors recovery, not its denial.

The more apt precedent is *Borunda*, 885 F.2d 1384. In that case, evidence of the cost of defense was permitted in a § 1983 case alleging the plaintiffs were arrested and charged without probable cause. The *Borunda* court held that a criminal defendant's "expenditures for legal representation during the prior criminal proceeding most assuredly constitute[d] economic harm" compensable under § 1983 where the officials' misconduct proximately caused the proceeding. *Id.* at 1389–90. Here the nexus is even tighter: Ms. Hill was not a distant instigator who misled a prosecutor but the court officer who corrupted the trial from within. If the defense fees in *Borunda* were recoverable, so are Mr. Murdaugh's. And as Judge Quarles noted in *Glass*, *Borunda* represents the majority position on this issue. 2015 WL 4619631, at *4.

### 2. *Mr. Murdaugh's pleaded theory of damages is loss of the value of his defense expenditure, not "causing the prosecution."*

Ms. Hill's causation argument attacks a theory the Complaint does not advance. Mr. Murdaugh does not allege that Ms. Hill caused his prosecution; the State's decision to charge and the grand jury's indictment are beside the point. For that reason, Mr. Murdaugh does not allege that Ms. Hill caused the upcoming trial of those indictments and that is why he does not seek recovery of the cost of defending the upcoming trial. His pleaded injury is that the $600,000 he withdrew from his sole remaining asset to defend a constitutionally fair trial was rendered worthless because Ms. Hill corrupted the first attempt at a trial, forcing its vacatur. Compl. ¶¶ 56, 62. That is a wasted-expenditure injury that flows directly from Ms. Hill's conduct, not from any third party. Mr. Murdaugh paid for a defense at a fair trial but, because of Ms. Hill's conduct, he did not receive it.

8

The but-for chain is straightforward: but for Ms. Hill's tampering, there would have been no constitutional violation, no vacatur, and no forfeiture of the value of Mr. Murdaugh's defense expenditure. Mr. Murdaugh must defend a constitutionally fair trial because the State chose to indict him. Ms. Hill did not cause that. Because Ms. Hill secretly tampered with the jury in the State's first attempt to try the indictments, Mr. Murdaugh was also required to defend a trial corrupted by Ms. Hill. The State did not cause that. *Murdaugh*, 2026 WL 1322305, at \*16 ("Hill's shocking jury interference was accomplished outside the presence and knowledge of the outstanding trial judge and superbly competent and professional counsel for the State . . . .").

Mr. Murdaugh thus must defend two trials, one corrupted by Ms. Hill and another one caused by the State's obligation to replace that trial with a fair trial of the indictments. Ms. Hill therefore is liable to him for the actual cost to Mr. Murdaugh of defending the unnecessary trial that she caused—the first trial. The upcoming second trial—which will cost significantly more than the first—is the necessary fair trial caused by the indictments. *Id.* Ms. Hill caused the need for two trials to occur, but the additional trial she caused is the *first* trial—the legal nullity with a vacated verdict—not the more expensive retrial that presumably will result in a constitutionally valid verdict.[2] The foreseeability of the damages she caused is a jury question. *E.g.*, *Hadfield v. Gilchrist*, 538 S.E.2d 268, 274 (S.C. Ct. App. 2000) (observing that "[d]amages are proximately caused if they are the foreseeable result of the defendant's tortious act" and "[p]roximate cause is a question for the finder of fact" (internal quotation marks omitted)). It is not likely a difficult question for a jury to find it foreseeable that secretly corrupting a six-week trial for personal profit would cause injury to the litigants.

---

[2] If the retrial is not, for some reason, constitutionally valid, the failure certainly would not have been caused by Ms. Hill.

9

**C.    The constitutional violation is established and may not be relitigated in a motion to dismiss.**

A substantial portion of Ms. Hill's motion—her harmless-error discussion, her invocation of *Remmer* hearings, and her insistence that her comments were "innocuous"—attempts to relitigate whether a constitutional violation occurred at all.  Of course, these arguments are factual disputes that cannot be resolved on a motion to dismiss.  *See E.I. du Pont de Nemours*, 637 F.3d at 450 (holding "a district court errs in going beyond the complaint on a Rule 12(b)(6) motion").

Additionally, the Court should abstain from even hearing this argument at this stage.  The Supreme Court of South Carolina squarely held that Ms. Hill's conduct violated Mr. Murdaugh's right to a fair trial by an impartial jury.  *Murdaugh*, 2026 WL 1322305, at \*1, 16.  That decision was based on a record developed at an evidentiary hearing at which Ms. Hill testified.  *Id.* at \*2. Ms. Hill should not be permitted to ask this Court to apply the same law (the Constitution) to the same factual record that was before the South Carolina Supreme Court and somehow come to a contrary conclusion.

This is not an application of "offensive nonmutual collateral estoppel."  That doctrine does not apply to Ms. Hill because she was not a party to *Murdaugh*.  Nor does the *Rooker-Feldman* doctrine apply to Ms. Hill.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005) ("*Rooker–Feldman* bars a losing party in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights, but the doctrine has no application to a federal suit brought by a nonparty to the state suit." (internal quotation marks omitted)).  Rather, principles of comity—the respect for state courts our federal Constitution requires—direct the Court to abstain from entertaining an argument that even if Ms. Hill did make the inappropriate comments to the jury that were attributed to her in *Murdaugh*, the *Remmer*

presumption was rebutted or inapplicable—no matter what the South Carolina Supreme Court says—and so Mr. Murdaugh suffered no constitutional deprivation.  *Cf.* 28 U.S.C. § 1738 (requiring federal courts to give full faith and credit to the judicial proceedings of any state); *Spencer v. Spencer*, 430 F. Supp. 683, 687 (M.D.N.C. 1977) (observing "general notions of comity, equity and federalism support the public policy against federal interference with state proceedings"); *Edmondson Cmty. Org., Inc. v. Mayor & City Council of Balt.*, 797 F. Supp. 3d 497, 512 (D. Md. 2025) (noting "the principle of comity is a practice of abstention").  This is especially true because the state-court proceedings involve the enforcement of criminal law.  *See Younger v. Harris*, 401 U.S. 37, 44 (1971) (discussing importance of the "notion of 'comity,' that is, a proper respect for state functions" in the context of state criminal prosecutions).

Of course, Ms. Hill has the right to challenge her liability in this action.  But the Court should abstain from allowing her to do so merely by asking this Court to hold that the South Carolina Supreme Court erred when ruling on the record before it because she has an adequate remedy that gives full faith and credit to the proceedings of the South Carolina Supreme Court—litigating this case.  To challenge liability, Ms. Hill may develop material facts in discovery that were not before the South Carolina Supreme Court or appeal to laws or legal doctrines (e.g., jurisdictional arguments or immunities from liability) not at issue in Mr. Murdaugh's appeal from the denial of his motion for a new trial based on after-discovered evidence (Ms. Hill's jury tampering).  For example, Ms. Hill's standing and immunity arguments fail because they are without merit, not because they have been decided by the South Carolina Supreme Court.  But the Court should abstain from hearing an argument that the factual allegations in the Complaint, assumed true and identical to the facts that were before the South Carolina Supreme Court, do not give rise to any constitutional violation, less than two months after the South Carolina Supreme

Court unanimously held they were grave constitutional violations requiring the reversal of two murder convictions.

**D.      Ms. Hill's § 1988 argument is not responsive to any claim in this case.**

Ms. Hill argues at length that criminal-defense fees are not recoverable as "costs" under 42 U.S.C. § 1988.  Mem. Supp. Mot. Dismiss 21–23.  But Mr. Murdaugh does not seek the $600,000 under § 1988; he pleads it as compensatory damages under § 1983.  Compl. ¶ 62.  The Complaint's § 1988 request seeks the fees Mr. Murdaugh incurs prosecuting *this* federal civil action—exactly what § 1988 authorizes a prevailing party to recover.  *N.C. Dep't Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 12 (1986).

**E.      Ms. Hill's challenges to Mr. Murdaugh's standing to bring suit are without merit.**

***1.      Whether the fee injury is traceable to Ms. Hill is irrelevant, but, regardless, it certainly is traceable to her.***

Traceability is the requirement of "a causal connection between the injury and the conduct complained of."  *Lujan*, 504 U.S. at 560.  Traceability is a "relatively modest" burden at the pleading stage and is not equivalent to proximate cause in tort law.  *Bennett v. Spear*, 520 U.S. 154, 168–71 (1997); *Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118, 134 n.6 (2014).  As noted above, compensatory damages are not an element of the claim.  Mr. Murdaugh is entitled to nominal damages even without any compensatory damages traceable to Ms. Hill's conduct.  *Carey*, 435 U.S. at 266.  The fact that her conduct deprived him of his rights under the Sixth Amendment and Fourteenth Amendment gives him standing to bring suit under § 1983.  *See Uzuegbunam*, 592 U.S. at 282–83 (holding that "to demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury" and that "an award of nominal damages by itself can redress a past injury").

Regardless, as also explained above, the pleaded actual damages are traceable to Ms. Hill's conduct—and only to her conduct. Ms. Hill's "independent third party" argument again answers the wrong question—whether she caused the prosecution. The pleaded injury is the lost value of the defense expenditure, which traces directly to Ms. Hill's tampering and the resulting vacatur. The prosecution did not cause the wasted defense expenditure in the first trial. *Murdaugh*, 2026 WL 1322305, at \*16. Ms. Hill did. *Id.* at \*1.

Ms. Hill's theory that Mr. Murdaugh is entitled only to a *pro rata* portion of his defense costs from the time her jury tampering allegedly began mid-trial to the verdict is odd, and why Ms. Hill believes that argument could have any bearing on standing is incomprehensible. When Ms. Hill's tampering actually began is a subject for discovery. Whether damages should be $600,000 or $165,000 or some other number manifestly is not a question to be decided on a motion to dismiss and certainly not a challenge to standing (nominal damages provide standing, *Uzuegbunam*, 592 U.S. at 282–83, 289–92). Why Ms. Hill believes that tampering with the jury only corrupts a discrete fraction of the trial is difficult to understand.

**2.      *Mr. Murdaugh's claim is ripe because the injury is complete.***

Ms. Hill's ripeness argument is expressly hypothetical: it applies only "to the extent" Mr. Murdaugh seeks damages for a future retrial, and Ms. Hill concedes "Plaintiff does not contend" any such thing. Mem. Supp. Mot. Dismiss 30. The pleaded injury—the already-incurred loss of $600,000—is a concrete, completed, past harm that accrued when Ms. Hill's tampering produced the tainted conviction. It rests on no "contingent future event." *See Scoggins v. Lees Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (holding a claim is ripe for adjudication if it does not depend on future contingent events) (internal quotation marks omitted). There is no articulable argument that the claim actually pleaded is not ripe for adjudication.

F.    **No immunity bars this action.**

*1.    The Eleventh Amendment does not bar this action.*

Ms. Hill's assertion of the Eleventh Amendment is without merit. Mr. Murdaugh sues Ms. Hill personally, in her individual capacity, a fact of which Ms. Hill is perfectly aware. At the time this suit was filed, she held no office and had no other capacity in which she could be sued. The current clerk of court for Colleton County is not a defendant in any capacity. Ms. Hill is sued personally for damages under § 1983 based upon actions taken in her official capacity. State officials sued in their personal capacity for damages are "persons" under § 1983 and are not protected by the Eleventh Amendment, even where the challenged conduct occurred in the course of their official duties. *Hafer v. Melo*, 502 U.S. 21, 27–31 (1991). "[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Hafer*, 502 U.S. at 30–31. *Hafer* is dispositive and disposes of the Eleventh Amendment defense in its entirety.

*2.    Quasi-judicial immunity does not shield unauthorized, non-judicial jury tampering.*

The Supreme Court "has refused to extend absolute immunity beyond a very limited class of officials, including the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions, 'whose special functions or constitutional status requires complete protection from suit.'" *Hafer*, 502 U.S. at 29 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).[3] County clerks of court are not in that very short list of officials having absolute immunity.

Absolute quasi-judicial immunity is determined by a "functional approach" that asks whether the specific act was a judicial function integral to the adjudicative process and requiring

---

[3] Prosecutors also receive absolute immunity for the performance of prosecutorial functions. *McCray v. Maryland*, 456 F.2d 1, 3 (4th Cir. 1972).

14

judicial-type discretion. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–37 (1993). Clerks receive such immunity only for tasks "integral or intertwined with the judicial process" performed at the direction of a judge—docketing filings, issuing routine process, and the like. "The touchstone for the doctrine's applicability has been performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Id.* at 435–36 (internal quotation marks omitted). "When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function." *Id.* at 436 (internal quotation marks and brackets omitted).

Ms. Hill's conduct was none of these things. Editorializing to jurors about the defendant's guilt, holding secret conversations with the foreperson, fabricating a Facebook post, interrogating and lying to a juror, and engineering that juror's removal are not discretionary judgments forming part of a clerk of court's caretaking functions; they are the antithesis of any legitimate clerk's role. Ms. Hill has the burden to prove absolute immunity:

> We have consistently "emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant."

*Id.* at 433 n.4 (quoting *Burns v. Reed*, 500 U.S. 478, 486–87 (1991)). Ms. Hill's argument that "some contact with the jury" was part of her duties does not meet this burden: that she was permitted to hand jurors coffee does not immunize her for secretly urging them to convict.

The Fourth Circuit has explained:

> The immunity of 'quasi-judicial' officers such as prosecuting attorneys and parole board members derives, not from their formal association with the judicial process, but from the fact that they exercise a discretion similar to that exercised by judges.

15

> Like judges, they require the insulation of absolute immunity to assure the courageous exercise of their discretionary duties.

*McCray*, 456 F.2d at 3. Obviously, Ms. Hill was not engaged in the courageous exercise of her discretionary duties when she decided to tamper with the jury in a murder trial in order to personally profit from writing a book about a guilty verdict. "Similarly, court clerks enjoy derivative absolute judicial immunity *when they act in obedience to a judicial order or under the court's direction.*" *Hamilton v. Murray*, 648 F. App'x 344, 345 (4th Cir. 2016) (citing *McCray*, 456 F.2d at 5) (emphasis added). Just as obviously, Ms. Hill's malfeasance was not performed at the judge's direction—Judge Newman was, for example, "not too pleased about the clerk interrogating a juror as opposed to . . . bringing it to me." Compl. ¶ 27. Certainly, he was unaware of any jury tampering and would have acted decisively to prevent it, had he been aware. An act the presiding judge would have forbidden cannot be one taken pursuant to his direction.

Ms. Hill therefore fails to show any entitlement to absolute quasi-judicial immunity.

### 3.     *Qualified immunity does not protect deliberate jury tampering by a state official because the right to an impartial jury is clearly established.*

Case law provides "government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 639 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). It is not enough that the right be clearly established; "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* "This is not to say that an official action is protected by qualified immunity unless

16

the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640 (citation omitted).

Qualified immunity is unavailable in this case for two independent reasons.

*First*, the right to trial before an impartial jury has been clearly established for a very long time. Sixty years ago, the Supreme Court held that a court officer's statements to jurors bearing on a defendant's guilt violate the Sixth Amendment, explaining that such an "officer of the court . . . beyond question carries great weight with a jury." *Parker v. Gladden*, 385 U.S. 363, 365 (1966); *see also Turner v. Louisiana*, 379 U.S. 466 (1965); *Remmer v. United States*, 347 U.S. 227 (1954). Ms. Hill attempts to define the right too narrowly, asking whether a *clerk* has ever been held liable for these precise words. But officials are not entitled to immunity merely because "the very action in question has [not] previously been held unlawful." *Anderson*, 483 U.S. at 640. Any reasonable clerk of court understood that secretly telling jurors not to be "fooled" or "confused" by the defense and to watch the defendant for signs of guilt—for personal profit—was unlawful. Sixty years ago, the Supreme Court held it violated the Sixth Amendment for a court bailiff to tell a juror the defendant is "guilty." *Parker*, 385 U.S. at 363. That suffices to clearly establish the right to a jury trial free of court officers secretly advocating the guilt of the accused to jurors during trial.

*Second*, this is an obvious case. Even absent a factually identical precedent, qualified immunity is denied where the unlawfulness is plain. *Taylor v. Riojas*, 592 U.S. 7, 7–9 (2020) (holding that lack of a factually identical precedent does not give rise to qualified immunity where no reasonable officer could have concluded that the conduct at issue was constitutionally permissible); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (holding that "[q]ualified immunity shields an officer from suit" only "when she makes a decision that, even if

17

constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted"); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (noting that where a violation of a constitutional right is obvious, the text of the constitutional provision at issue itself may be sufficient to provide officials "fair warning that their conduct violated the Constitution" because the "general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question"). Deliberate jury tampering by the officer charged with protecting the jury, undertaken for personal financial gain, is the paradigm of an obvious constitutional violation.

Ms. Hill's attempt to use Chief Justice Toal's reversed harmless-error ruling as a basis for qualified immunity conflates two distinct questions: whether jury tampering was a clearly established constitutional violation, and whether Ms. Hill's jury tampering in *Murdaugh* was prejudicial to the verdict. Chief Justice Toal merely found insufficient proof of prejudice under a standard the Supreme Court of South Carolina rejected on appeal. Regarding Ms. Hill, Chief Justice Toal found her denials of making "improper comments to the jurors" not credible, that Ms. Hill was motivated by wanting "to write a book, which she believed a guilty verdict would help sell; she was 'attracted by the siren call of celebrity'; and '[s]he allowed her desire for the public attention of the moment to overcome her duty to her oath of office and her oath as a witness.'" *Murdaugh*, 2026 WL 1322305, at *3. Those are hardly findings supporting an argument that qualified immunity is available because Ms. Hill reasonably believed her conduct was lawful. To the contrary, Ms. Hill knew her conduct was unlawful, which is why she concealed her conduct from the judge, instructed jurors not to discuss it, lied to a juror, fabricated evidence, and later committed perjury during the evidentiary hearing about her conduct. Compl. ¶¶ 18, 24–30, 50. Those are not the acts of an officer who believed she was acting lawfully, and they forfeit any

claim to qualified immunity.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding qualified immunity does not protect "those who knowingly violate the law").

**IV.     Conclusion**

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety.  In the alternative, Mr. Murdaugh requests leave to amend under Rule 15(a) under the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ Phillip D. Barber
Richard A. Harpootlian (Fed. ID No. 1730)
Phillip D. Barber (Fed. ID No. 12816)
Andrew R. Hand (Fed. ID No. 12176)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, SC 29202
(803) 252-4848
rah@harpootlianlaw.com
pdb@harpootlianlaw.com
arh@harpootlianlaw.com

James M. Griffin (Fed. ID No. 1053)
Margaret N. Fox (Fed. ID No. 10576)
GRIFFIN HUMPHRIES LLC
8906 Two Notch Road (29223)
Post Office Box 999
Columbia, South Carolina 29202
(803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

*Attorneys for Plaintiff*

July 2, 2026
Columbia, South Carolina

19